UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANINE GORDON,

                    Plaintiff,

          -against-

INVISIBLE CHILDREN, INC. and JASON
RUSSELL,

                    Defendants.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  9/24/2015____
```

**MEMORANDUM**
**OPINION & ORDER**

14 Civ. 4122 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

On June 6, 2014, pro se Plaintiff Janine Gordon filed this action against Defendants Invisible Children, Inc. and Jason Russell.  (Dkt. No. 3)  Plaintiff is an artist, and she alleges that Defendants infringed her copyright in a photographic print that she created, and unlawfully modified and distorted the print in violation of the Visual Artists Rights Act, 17 U.S.C. § 101 et seq. ("VARA").

Defendants have moved to dismiss (Dkt. No. 21), arguing that (1) Plaintiff has failed to state a claim for copyright infringement; (2) Plaintiff has failed to state a claim under the VARA; and (3) this Court lacks personal jurisdiction over Defendant Russell.  (Def. Br. (Dkt. No. 22))

For the reasons stated below, Defendants' motion to dismiss will be granted.

## BACKGROUND[1]

### I.  DEFENDANTS' ONLINE CAMPAIGN AGAINST JOSEPH KONY AND THE LORD'S RESISTANCE ARMY

In March 2012, Defendants launched an online advertising campaign that sought to draw attention to the alleged crimes of a Ugandan warlord named Joseph Kony.  This case arises from Defendants' alleged use in their online advertising campaign of an image in which Plaintiff holds a copyright.

According to Defendants, Kony – who heads the Lord's Resistance Army – has abducted over 30,000 children and turned them into child soldiers and sex slaves.  See Invisible Children, KONY 2012, YouTube (Mar. 5, 2012) available at https://www.youtube.com/watch?v=Y4MnpzG5Sqc (Attachment to Dkt. No. 39)[2] ("Kony 2012 video").

A key aspect of Defendants' online advertising campaign against Kony is a thirty-minute video entitled "Kony 2012."  Defendant Invisible Children, Inc. "released the . . . video with supporting website graphics and promotion materials."  (Cmplt. (Dkt. No. 3) ¶¶ 26-28)  Defendant Jason Russell is "Co[-]Founder and Chief Creative Director for Invisible Children and

---

[1]  The following facts are drawn from the Complaint and are presumed true for purposes of resolving Defendants' motion to dismiss.  See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).  "In assessing the legal sufficiency of [a plaintiff's] claim[s] [on a motion to dismiss,]" the court may "consider . . . the complaint and any documents attached thereto or incorporated by reference and 'documents upon which the complaint "relies heavily."'"  Bldg. Indus. Elec. Contractors Ass'n v. City of New York, 678 F.3d 184, 187 (2d Cir. 2012) (quoting In re Citigroup ERISA Litig., 662 F.3d 128, 135 (2d Cir. 2011) (quoting DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010))).  Accordingly, in resolving Defendants' motion, the Court has considered documents, images, and videos relied on heavily and incorporated by reference in the Complaint, including the YouTube video containing the allegedly infringing images.  See Cmplt. (Dkt. No. 3) ¶ 4 (providing link to YouTube video).
[2] Plaintiff has submitted a disc containing copies of the videos in which the allegedly infringing images appear.  The disc is filed as an attachment to Dkt. No. 39.

directed the video Kony 2012." (Id. ¶ 20)  In the video, Russell discusses Kony's crimes, urges viewers to protest those crimes, calls on our government to take action, and urges viewers to sign a "pledge" of support for Invisible Children's cause, donate money to Invisible Children, and share the Kony 2012 video online.  (Kony 2012 video (Att. to Dkt. No. 39))

Defendants posted the Kony 2012 video on YouTube, where it "has over 50 million hits" and "over 100 million views."  (Cmplt. (Dkt. No. 3) ¶ 24)  The Kony 2012 video has "attract[ed] a huge amount [of] viewers . . . [and] millions of dollars in donations [to Defendant Invisible Children, Inc.]."  (Id. ¶ 10; see also id. ¶ 73; Pltf. Br. (Dkt. No. 31) at 28))

Plaintiff alleges that "[t]he Kony 2012 [c]ampaign has [been subject to] widespread negative criticism both politically [and] on pop culture sites."  (Id. ¶ 73)  "The Council o[n] Foreign Relations [has] reproached Invisible Children for manipulating facts for strategic purposes [and] exaggerating the scale of the [Lord's Resistance Army's] abductions and murders."  (Id. ¶ 73 n.8 (citation and quotation marks omitted))  Invisible Children "has [also] been repeatedly questioned for its financial allocation of funds" obtained from viewers of the video.  (Id. ¶ 73)  Vice, an online news company, has asserted that "Invisible Children is a financially questionable organization."  (Id. ¶ 73 n.9 (citation and quotation marks omitted))

## II.  THE IMAGES AT ISSUE

The images that give rise to this lawsuit are used in the Kony 2012 video.  These images show Kony standing with his arms outstretched before a crowd of children – ostensibly his army of child soldiers and slaves:



(Cmplt. (Dkt. No. 3) Ex. B)



(Id.)



(Id.)



(Id.)

Plaintiff Janine Gordon claims that she is a "widely known and lauded fine art[]" photographer, and that these images – used by Defendants in the 2012 Kony video – infringe her copyright in a photograph she took at the 2001 "Warped Tour."  (Cmplt. (Dkt. No. 3) ¶¶ 18, 40)  The "Warped Tour" is a series of punk and alternative rock concerts, and the photograph taken by Gordon at the 2001 Warped Tour shows a tank-top clad man holding back a crowd of concert-goers, with his arms outstretched and his face turned upward towards the sky:



(Cmplt. (Dkt. No. 3) Ex. A)

Gordon's photograph – in which she holds a copyright registration – is entitled Plant Your Feet on the Ground.  (Id. ¶¶ 1-2)  The photograph was featured in the 2002 Whitney Museum Biennial exhibition, and the Museum later purchased the photograph, making it part of the Museum's permanent collection, where it remains on display.  (Id. ¶¶ 2, 31-33)

Plaintiff claims that the images from the Kony 2012 video shown above are "substantially based upon [her photograph]," and that Defendants used her photograph "without securing rights and paying compensation."  (Id. ¶ 3)  She further alleges that "Defendants have harmed Plaintiff[']s honor and reputation by causing confusion regarding authorship and diluting protectable elements of a 'work of recognized stature,'" and by "mutilat[ing], distorting, and modif[ying]" Plaintiff's image  (Id. ¶¶ 5-6)  Plaintiff also claims that Defendants have harmed her reputation by associating "her work with [Invisible Children, Inc.,] a highly criticized organization" (id. ¶ 7), and by "falsely attributing authorship of the Kony 2012 [c]ampaign to Jason Russell."  (Id. ¶ 8)  Based on these alleged injuries, Plaintiff asserts claims under the Copyright Act, 17 U.S.C. §§ 501(a), 104, 106, 106A, and 113(a), and the VARA, 17 U.S.C. § 101 et seq.

## III.   PROCEDURAL HISTORY

Plaintiff filed this action on June 6, 2014.  (Cmplt. (Dkt. No. 1)  That same day, Plaintiff moved by order to show cause for a temporary restraining order and preliminary injunction that would require Defendants to take down from YouTube and other online outlets, inter alia, the Kony 2012 video.  (Dkt. No. 1)  On June 17, 2014, this Court denied Plaintiff's motion (Dkt. No. 6), finding that

> a comparison of Plaintiff's print and Defendants' image demonstrates obvious differences between the works . . . .  These differences include the poses of the main figure at the center of each image (one's arms are lowered, while the other's arms are raised), the ethnicities of those shown (Plaintiff's figures are Caucasian, while Defendants' are Ugandan), and the genders of the figures (the figures in the background of Plaintiff's image are all male, while the figures in the background of Defendant's image are all female.

(Id. at 2)

On October 27, 2014, Defendants moved to dismiss (Dkt. No. 21), arguing that (1) Plaintiff has failed to state a claim for copyright infringement; (2) Plaintiff has failed to state a claim under the VARA; and (3) this Court lacks personal jurisdiction over Defendant Russell. (Def. Br. (Dkt. No. 22))

## DISCUSSION

## I.    LEGAL STANDARD ON MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . .  the court is to accept as true all facts alleged in the complaint," Kassner, 496 F.3d at 237 (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).  "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco, 622 F.3d at 111 (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. Cnty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)).

8

"A pro se litigant's submissions are held to 'less stringent standards than [those] drafted by lawyers.'" Whitfield v. O'Connell, No. 09 Civ. 1925 (WHP), 2010 WL 1010060, at *4 (S.D.N.Y. Mar. 18, 2010) (alterations in original) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).  Where a "plaintiff is proceeding pro se, the Court construes the complaint liberally, 'interpret[ing] it to raise the strongest arguments that it suggests.'" Braxton v. Nichols, No. 08 Civ. 08568 (PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010) (internal citations omitted) (quoting Harris v. Westchester Cnty. Dep't of Corr., No. 06 Civ. 2011 (RJS), 2008 WL 953616, at *2 (S.D.N.Y. Apr. 3, 2008)).  "Moreover, [factual] allegations made in a pro se plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss." Braxton, 2010 WL 1010001, at *1.  However, "the court need not accept as true 'conclusions of law or unwarranted deductions of fact.'" Whitfield, 2010 WL 1010060, at *4 (quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994)); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) ("[T]hreadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief].").

## II.   PERSONAL JURISDICTION OVER DEFENDANT RUSSELL

Defendant Russell argues that this Court lacks personal jurisdiction over him. (Def. Br. (Dkt. No. 22) at 16-21)  "Jurisdiction to resolve cases on the merits requires . . . authority . . . over the parties (personal jurisdiction), so that the court's decision will bind them." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577 (1999).  Accordingly, before considering Defendants' Rule 12(b)(6) motion to dismiss, this Court must determine whether it may exercise personal jurisdiction over Russell.

"In litigation arising under federal statutes that do not contain their own jurisdictional provisions, . . . federal courts are to apply the personal jurisdiction rules of the forum state, provided that those rules are consistent with the requirements of Due Process." Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 35 (2d Cir. 2010) (internal citations omitted).  "[C]ontacts with [a] forum may confer two types of jurisdiction – specific and general."  In re Parmalat Sec. Litig., 376 F. Supp. 2d 449, 453 (S.D.N.Y. 2005) (footnote omitted).

General jurisdiction "'is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts.'"  Id. (quoting Metro. Life Ins. Co. v. Robertson Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996)).  "Specific jurisdiction exists when a forum 'exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum[.]'"  Id. (quoting Metro. Life Ins. Co., 84 F.3d at 567-68 (internal quotation marks and citation omitted)).

A.      **General Personal Jurisdiction**

In New York, general jurisdiction under N.Y. C.P.L.R. § 301 is only appropriate where a non-resident is "'engaged in such a continuous and systematic course of "doing business" [in the state] as to warrant a finding of its "presence" in this jurisdiction.'"  Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990) (quoting McGowan v. Smith, 52 N.Y.2d 268, 272 (1981) (quoting Simonson v. Int'l Bank, 14 N.Y.2d 281, 285 (1964))).  To be "present," a defendant must do business in New York "'not occasionally or casually, but with a fair measure of permanence and continuity.'"  Moore v.

Publicis Groupe SA, No. 11 Civ. 1279 (ALC) (AJP), 2012 WL 6082454, at *5 (S.D.N.Y. Dec. 3, 2012) (quoting Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985)).

Here, Russell argues that he is not subject to general jurisdiction in New York,

> because [he] is [a] California domiciliary and presently resides in San Diego, California.  He has never maintained a residence in the state of New York.  He does not maintain a mailing address or a bank account in New York.  He does not derive any revenue from New York.  And he has not transacted business in New York or engaged in any persistent course of conduct in New York.

(Def. Br. (Dkt. No. 22) at 4 (citations and quotation marks omitted))

As to jurisdictional facts concerning Russell in the Complaint, Plaintiff merely pleads that he "is a resident of San Diego, California."  (Cmplt. (Dkt. No. 3) ¶ 22)  The Complaint pleads no facts demonstrating that Russell does business in New York, much less that any business Russell conducts in New York is conducted "with a fair measure of permanence and continuity."  Moore, 2012 WL 6082454, at *5 (citation and quotation marks omitted). Accordingly, this Court does not have general personal jurisdiction over Russell.

## B.   Specific Personal Jurisdiction

### 1.   Applicable Law

New York's long-arm statute provides, in relevant part, that a court may exercise specific personal jurisdiction over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state," where plaintiff's claim arises out of that transaction of business or contract.   N.Y. C.P.L.R. § 302(a)(1).  To establish personal jurisdiction under this section, plaintiff must show that "(1) defendant purposefully availed himself of the privilege of doing business in the forum state such that the defendant could foresee being brought into court there; and (2) plaintiff's claim arises out of or is related to the defendant's contacts with the forum state."  Aqua Prods., Inc. v. Smartpool, Inc., No. 04 Civ.

5492 (GBD), 2005 WL 1994013, at *5 (S.D.N.Y. Aug. 18, 2005) (citing Helicopteros

Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984); World-Wide Volkswagen

Corp. v. Woodson, 444 U.S. 286, 297 (1980); Chew v. Dietrich, 143 F.3d 24, 28 (2d Cir. 1998)).

        "A court will have personal jurisdiction over a defendant, pursuant to § 302(a)(2),

if the defendant 'commits a tortious act within the state.'"   Virgin Enters. Ltd. v. Virgin Eyes

LAC, No. 08 Civ. 8564 (LAP), 2009 WL 3241529, at *4 (S.D.N.Y. Sept. 30, 2009) (quoting

N.Y. C.P.L.R. § 302(a)(2)).   "[T]he New York Court of Appeals has interpreted [this] subsection

to reach only tortious acts performed by a defendant who was physically present in New York

when he committed the act."   Id. (citing Longines-Wittnauer Watch Co. v. Barnes & Reinecke,

Inc., 15 N.Y.2d 443, 460 (1965) ("Any possible doubt on this score is dispelled by the fact that

the draftsmen of section 302 pointedly announced that their purpose was to confer on the court

'personal jurisdiction' over a non-domiciliary whose act in the state gives rise to a cause of

action or, stated somewhat differently, 'to subject non-residents to personal jurisdiction when

they commit acts within the state.'") (citations omitted)).   "[I]n Bensusan Restaurant Corp. v.

King, the [Second Circuit] declined to deviate from the New York Court of Appeals' decision in

Longines-Wittnauer . . . ."   Id. (citing Bensusan Rest. Corp. v. King, 126 F.3d 25, 29 (2d Cir.

1997)).

        Section 302(a)(3) allows for "a nondomiciliary who 'commits a tortious act

without the state causing injury . . . within the state' [to] be brought before a New York court to

answer for his conduct if he has had sufficient economic contact with the State or an active

interest in interstate or international commerce coupled with a reasonable expectation that the

tortious conduct in question could have consequences within the State."   McGowan, 52 N.Y.2d

at 273 (quoting N.Y. CPLR § 302(a)(3)).   Under Section 302(a)(3), any non-domiciliary who in

person or through an agent "'commits a tortious act without the state causing injury to person or property within the state'" may be subject to personal jurisdiction if he

> "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. . . ."

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 790-91 (2d Cir. 1999) (quoting N.Y. CPLR § 302(a)(3)).

Even where New York's long-arm statute would permit a court to exercise personal jurisdiction over a defendant, that exercise of personal jurisdiction must also comport with due process.  To satisfy the Due Process Clause, "the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'"  Walden v. Fiore, 134 S.Ct. 1115, 1121 (2014) (quoting Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. and Placement, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940))).  "The inquiry [with respect to specific personal jurisdiction] . . . 'focuses on "the relationship among the defendant, the forum, and the litigation."'"  Id. (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977))).  Accordingly, for this Court "to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state."  Id.

Moreover, "the relationship [between the defendant's suit-related conduct and the forum] must arise out of contacts that the 'defendant himself' creates with the forum . . . ."  Id. at 1122 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)) (emphasis in original).  And the "'minimum contacts' analysis looks to the defendant's contacts with the

forum . . . itself, not the defendant's contacts with persons who reside there." Id.  While "a defendant's contacts with the forum . . . may be intertwined with his transactions or interactions with the plaintiff or other parties," these relationships, "standing alone, [are] an insufficient basis for jurisdiction." Id. at 1123.  "Due process requires that a defendant be haled into court in a forum . . . based on his own affiliation with the [forum], not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the [forum]." Id. (quoting Burger King, 471 U.S. at 475).  In this regard, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Id. at 1125.

A defendant need not have committed a physical act within the forum state, however; the test may be satisfied where "an act performed elsewhere[] causes an effect in the [forum]." Eskofot A/S v. E.I. Du Pont De Nemours & Co., 872 F. Supp. 81, 87 (S.D.N.Y. 1995) (citing SEC v. Unifund SAL, 910 F.2d 1028, 1033 (2d Cir. 1990)) (applying minimum contacts analysis in context of Fed. R. Civ. P. Rule 4(k)(2)).  Indeed, in Walden, the Supreme Court discussed at length how the effects of a defendant's conduct can tie the defendant sufficiently to a forum to permit the exercise of personal jurisdiction.  Justice Thomas explained that

> [t]he crux of Calder [– a case finding specific personal jurisdiction in California where a Florida-based paper published a defamatory article about a California actress –] was that the reputation-based "effects" of the alleged libel connected the defendants to California, not just to the plaintiff.  The strength of that connection was largely a function of the nature of the libel tort.  However scandalous a newspaper article might be, it can lead to a loss of reputation only if communicated to (and read and understood by) third persons. . . . Accordingly, the reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens.  Indeed, because publication to third persons is a necessary element of libel, . . . the defendants' intentional tort actually occurred in California. . . . In this way, the "effects" caused by the defendants' article – i.e., the injury to the plaintiff's reputation in the estimation of the California public – connected the defendants' conduct to

> California, not just to a plaintiff who lived there. That connection, combined with the various facts that gave the article a California focus, sufficed to authorize the California court's exercise of jurisdiction.

Walden, 134 S.Ct. at 1123-24 (emphasis in original) (footnote omitted).

In this Circuit, "where 'the conduct that forms the basis for the controversy occurs entirely out-of-forum, and the only relevant jurisdictional contacts with the forum are therefore in-forum effects harmful to the plaintiff,'" a court is to employ "an 'effects test,' by which 'the exercise of personal jurisdiction may be constitutionally permissible if the defendant expressly aimed its conduct at the forum.'" Tarsavage v. Citic Trust Co., Ltd., 3 F. Supp. 3d 137, 145 (S.D.N.Y. 2014) (quoting Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 173 (2d Cir. 2013) (citing Calder, 465 U.S. at 789)).  It is not sufficient that conduct incidentally had an effect in the forum, or even that effects in the forum were foreseeable.  See id. (citing In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 674 (2d Cir. 2013)).  Instead, the defendant must have intentionally caused – i.e., expressly aimed to cause – an effect in the forum through his conduct elsewhere.  See id. (citing In re Terrorist Attacks on Sept. 11, 2001, 538 F.3d 71, 95 (2d Cir. 2008), abrogated on other grounds by Samantar v. Yousuf, 560 U.S. 305 (2010)).

## 2.   **Analysis**

Here, the exercise of specific personal jurisdiction over Russell would not comport with due process, because Plaintiff has not demonstrated that Russell's suit-related conduct creates minimum contacts with New York.  See Walden, 134 S.Ct. at 1121.

Plaintiff alleges that she lives in New York and that Russell's conduct injured her here.  See Cmplt. (Dkt. No. 3) ¶¶ 1-10, 17, 19.  She also claims that there was "extensive media coverage [of the anti-Kony campaign] that appeared in the state of New York[,]" (Pltf. Br. (Dkt. No. 31) at 23) including a "New York Daily News article" discussing the Kony 2012 campaign.

(Id. at 27)[3]  Plaintiff further asserts that the Kony 2012 video – which Russell both directed and narrates – garnered Invisible Children "hundreds of thousands of dollars [of donations] within the state of New York" (id. at 23-24), and that Invisible Children, Inc. paid Russell $94,584 in 2012.  (Id. at 26)

Due process requires more for the exercise of personal jurisdiction, however. Russell's suit-related conduct must tie him to New York itself, not just to a plaintiff who happens to reside in New York.  Walden, 134 S.Ct. at 1121-22.  Moreover, while "a defendant's contacts with the forum . . . may be intertwined with his transactions or interactions with the plaintiff or other parties," – here, the Invisible Children organization, its donors, or the press – these relationships, "standing alone, [are] an insufficient basis for jurisdiction."  Id. at 1123.  "Due process requires that a defendant be haled into court in a forum . . . based on his own affiliation with the [forum], not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the [forum]."  Id. (quoting Burger King, 471 U.S. at 475) (emphasis added).

Here, Plaintiff has offered no facts suggesting that Russell himself established a jurisdictionally relevant connection with New York.  Although Russell's direction and narration of the Kony 2012 video likely played a role in garnering donations for Invisible Children – including donations from New York residents – and Russell was paid $94,584 by that organization, this connection is far too "'random, fortuitous, or attenuated'" to establish the requisite minimum contacts with New York.  Id. (quoting Burger King, 471 U.S. at 475).

---

[3]  As noted above, "[i]n view of [Plaintiff's] pro se status, the Court also may rely on [Plaintiff's] opposition papers in assessing the legal sufficiency of [her] claims."  Manolov v. Borough of Manhattan Cmty. Coll., 952 F. Supp. 2d 522, 531 (S.D.N.Y. 2013).

16

Nothing about Russell's conduct – as alleged in the Complaint or described in Plaintiff's brief – suggests that he established "his own affiliation with [New York]."  Id. (emphasis added).

        The Complaint likewise does not satisfy the "effects test," which requires factual allegations demonstrating that Russell's suit-related conduct was "'expressly aimed'" at New York, in addition to having an effect here.  Tarsavage, 3 F. Supp. 3d at 145 (quoting Licci, 732 F.3d at 173).  The Kony 2012 video is a plea to people throughout the world to take action to help stop the atrocities being committed by Kony and the Lord's Resistance Army.  Nothing in the Complaint suggests, however, that this call to action was "'expressly aimed,'" id., at New York residents.  Although Plaintiff alleges that Russell's conduct (1) injured her in New York, (2) led to press coverage in New York, and (3) led to donations to Invisible Children from New York residents, these connections do not suggest any purposeful attempt or express aim on Russell's part to cause an effect specifically in New York.

        Even assuming arguendo that Russell's actions (1) caused an effect in New York, and (2) that this effect was foreseeable, "the fact that harm in the forum is foreseeable . . . is insufficient for the purpose of establishing specific personal jurisdiction over a defendant."  In re Terrorist Attacks, 714 F.3d at 674.  Because the Complaint does not plead facts demonstrating that Russell's actions were taken with the express aim of causing an effect in New York, the "effects test" is not satisfied.  See Tarsavage, 3 F.Supp. 3d at 145.

        This Court does not have specific personal jurisdiction over Russell.  Accordingly, the claims against him must be dismissed.

**III.     PLAINTIFF HAS FAILED TO STATE A
           CLAIM FOR COPYRIGHT INFRINGEMENT**

     **A.     Legal Standard for Copyright Infringement**

"To establish copyright infringement, 'two elements must be proven:

(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are

original.'"  Williams v. Crichton, 84 F.3d 581, 587 (2d Cir. 1996) (quoting Feist Publ'ns, Inc. v.

Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)).

> To demonstrate unauthorized copying, the plaintiff must first show that his work
> was actually copied; second he must establish substantial similarity or that the
> copying amounts to an improper or unlawful appropriation, i.e., (i) that it was
> protected expression in the earlier work that was copied and (ii) that the amount
> that was copied is more than de minimis.

Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 131 (2d Cir.

2003) (internal quotation marks and citation omitted).

"Thus, as an initial matter, a plaintiff must show that the defendant 'actually

copied' [Plaintiff's] work."  Gal v. Viacom Int'l, Inc., 518 F. Supp. 2d 526, 536-37 (S.D.N.Y.

2007).  "In the absence of direct evidence, copying is proven by showing (a) that the defendant

had access to the copyrighted work and (b) the substantial similarity of protectible material in the

two works."  Williams, 84 F.3d at 587 (internal quotation marks and citation omitted).  "'In the

alternative, "[i]f the two works are so strikingly similar as to preclude the possibility of

independent creation, 'copying' may be proved without a showing of access."'"  Tisi v. Patrick,

97 F. Supp. 2d 539, 547 (S.D.N.Y. 2000) (quoting Lipton v. Nature Co., 71 F.3d 464, 471 (2d

Cir. 1995) (quoting Ferguson v. NBC, Inc., 584 F.2d 111, 113 (5th Cir. 1978))).  "Once copying

has been shown, a plaintiff must still demonstrate 'substantial similarity' between the

defendant's work and the protectible elements of plaintiff's work, because 'not all copying

results in copyright infringement.'" Gal, 518 F. Supp. 2d at 537 n.4 (quoting Boisson v. Banian, Ltd., 273 F.3d 262, 268 (2d Cir. 2001)).

## B.   **Analysis**

Defendants argue that "[even] if th[is] Court assumes, solely for purposes of this motion, that Defendants did have access to Gordon's work, Gordon's claim fails on substantial similarity grounds alone."  (Def. Br. (Dkt. No. 22) at 8 (footnote omitted))  "[T]he focus of [Defendants'] motion is that [Gordon's photograph] and [the images in] KONY 2012 are not substantially similar, precluding a finding of copyright infringement as a matter of law."  (Id. at 8)  Accordingly, for purposes of this motion, this Court will assume that the "access" element is satisfied, and consider whether Plaintiff has demonstrated substantial similarity

### 1.   **Substantial Similarity**

Although "[t]he test for infringement of a copyright is of necessity vague," Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487, 489 (2d Cir. 1960), "[t]he question of substantial similarity is by no means exclusively reserved for resolution by a jury . . . ." Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 63 (2d Cir. 2010).  Where, as here, "the works in question are attached to a plaintiff[']s complaint, it is entirely appropriate for the district court to consider the similarity between those works in connection with a motion to dismiss, because the court has before it all that is necessary in order to make such an evaluation." Id. at 64.  Accordingly, if the district court determines that the works at issue are "not substantially similar as a matter of law," Kregos v. Associated Press, 3 F.3d 656, 664 (2d Cir. 1993), the district court can properly conclude that the plaintiff's complaint and the works incorporated therein do not "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 678.

        "In the Second Circuit, the 'standard test for substantial similarity between two

items is whether an ordinary observer, unless he set out to detect the disparities, would be

disposed to overlook them, and regard [the] aesthetic appeal as the same.'"[4] DiTocco v.

Riordan, 815 F. Supp. 2d 655, 665 (S.D.N.Y. 2011) (quoting Peter F. Gaito Architecture, 602

F.3d at 66).  The "'ordinary observer' test asks whether 'an average lay observer would

recognize the alleged copy as having been appropriated from the copyrighted work.'"  Id.

(quoting Peter F. Gaito Architecture, 602 F.3d at 66).

---

[4]  In certain types of cases, the Second Circuit has directed courts to apply a "more discerning"
test than the ordinary observer test.  This more complex test – first articulated in Folio
Impressions v. Byer California, 937 F.2d 759, 766 (2d Cir. 1991) – applies when "a work
contains both protectible and unprotectible elements, and requires the court to eliminate the
unprotectible elements from its consideration and to ask whether the protectible elements,
standing alone, are substantially similar."  Hamil Am., Inc. v. GFI, 193 F.3d 92, 101 (2d Cir.
1999) (citing Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1002 (2d Cir. 1995) and Folio
Impressions, 937 F.2d at 765-66)).  The "more discerning" test applies only where a copyrighted
work "is not 'wholly original,' but rather incorporates elements from the public domain."
Boisson, 273 F.3d at 272 (quoting Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters., Inc.,
945 F.2d 509, 514 (2d Cir. 1991)); see also Aaron Basha Corp. v. Felix B. Vollman, Inc., 88 F.
Supp. 2d 226, 231 (S.D.N.Y. 2000) ("[the more discerning] test applies only if a plaintiff has
imported a substantial portion of its work from the public domain." (citing Hamil Am., 193 F.3d
at 100-02)); Diamond Direct, LLC v. Star Diamond Grp., Inc., 116 F. Supp. 2d 525, 530 n.31
(S.D.N.Y. 2000) ("[T]he Second Circuit has cautioned that [the more discerning test] is
appropriate only where the other elements of the work have been copied from the public
domain.").  Even where the "more discerning" test applies, however, the Second Circuit has
"disavowed any notion that [the court] [is] required to dissect [the works] into their separate
components and compare only those elements which are themselves copyrightable.  Instead,
[courts] are principally guided by comparing the contested design's total concept and overall feel
with that of the allegedly infringed work."  Gaito, 602 F.3d at 66 (citations and quotation marks
omitted).

In any event, Plaintiff has not imported a substantial portion of her work from the public domain.
Accordingly, the ordinary observer test applies.  See Gordon v. McGinley, No. 11 Civ. 1001
(RJS), 2011 WL 3648606, at *3 (S.D.N.Y. Aug. 18, 2011) (applying the ordinary observer test in
copyright infringement case brought by Gordon involving, inter alia, the photograph at issue in
this case), aff'd in relevant part, 502 F. App'x 89 (2d Cir. 2012).

"Application of the ordinary observer standard requires [a court] to scrutinize the two [images] for substantial similarity" and consider whether "an average lay observer [would] recognize [the allegedly infringing images] as having been appropriated from [plaintiff's work]." Hamil Am., 193 F.3d at 102; see Knitwaves, Inc., 71 F.3d at 1002.  In comparing works for infringement purposes, courts examine the works' "'total concept and feel.'"  Hamil Am., 193 F.3d 103 (quoting Knitwaves, Inc., 71 F.3d at 1004).  Moreover, in applying the "ordinary observer" standard, "'[g]ood eyes and common sense may be as useful as deep study of reported and unreported cases, which themselves are tied to highly particularized facts.'"  Id. at 102 (quoting Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc., 490 F.2d 1092, 1093 (2d Cir. 1974)).  "'What is required is only a visual comparison of the works.'"  Id. (quoting Folio Impressions, 937 F.2d at 766).

"In this case, the dictates of good eyes and common sense lead inexorably to the conclusion that there is no substantial similarity between Plaintiff's work[] and the allegedly infringing [Kony 2012 images]."  Gordon, 2011 WL 3648606, at *3.  While Plaintiff points to certain generic similarities between her photograph and the Kony 2012 images – all depict a male figure standing in front of crowd, wearing a white tank top, with his arms stretched out to the side (see Cmplt. (Dkt. No. 3) ¶¶ 43-54) – "[i]n copyright infringement actions, 'the works themselves supersede and control contrary descriptions of them.'"  Gaito, 602 F.3d at 64 (quoting Walker v. Time Life Films, Inc., 784 F.2d 44, 52 (2d Cir. 1986)).  Here, a visual comparison of the works reveals that the "'total concept and feel'" of Gordon's photo and the Kony 2012 images are entirely dissimilar.  See Hamil Am., 193 F.3d at 103 (quoting Knitwaves, Inc., 71 F.3d at 1004).



(Cmplt. (Dkt. No. 3) Ex. A)



(Id. Ex. B)

Plaintiff's photograph is in black and white.  It shows a group of white male teenagers dressed in tee shirts, tank tops, shorts, and jeans.  A teenager in the front center of the photograph wears a white tank top.  His arms are extended out to his sides and angled down, and he appears to be holding back a group of teenagers surrounding him.  His face is turned up to the sky and his mouth is open, as if in awe.  This individual is wearing a collar around his neck.  The teenagers behind the central figure are a jumbled, disorganized mass, and they face in different directions.  The photograph is taken from straight on, and the lighting, posture, and positioning of the figures draws the viewer's attention to the face of the teenager in the forefront.  There is a grittiness to Gordon's photograph, and it evokes a sense of barely restrained chaos.

The allegedly infringing images from the 2012 anti-Kony campaign are, by contrast, in color with a slight sepia tinge.  They feature groups of black African children, apparently all young girls.  The larger images show hundreds, if not thousands, of young black girls standing in lines, ramrod straight in their dresses, all looking directly at the camera.  A black man wearing a white tank top stands in the center, in front of the girls.  He appears to be presenting the girls to viewers.  His arms are raised high to his sides, and he looks directly into the camera, as if to say, "look at what I control."  The man wears a headdress of some sort, but nothing around his neck. The photograph is evenly lit, and the positioning and posture of the girls shown suggests not barely restrained chaos, but instead the man's total control and dominion over them.  The "total concept and feel" of the Kony 2012 images is entirely different from the "total concept and feel" of Plaintiff's photograph.  Moreover, it is clear from the camera angles, the focus, the positioning of the figures, the lighting, and the other features of the allegedly infringing images that they were not appropriated from Plaintiff's photograph. Whether comparing the images feature-by-feature, or by their overall impression on the viewer, the only

23

reasonable conclusion is that Gordon's photograph and the allegedly infringing Kony 2012 images are not substantially similar.

"Less readily apparent is the fact that only the Gordon [i]mage is a still photograph.  The [allegedly infringing images are] screen grab[s] from [the Kony 2012 video]." Gordon, 2011 WL 3648606, at *5.  The nature of the allegedly infringing images further highlights the significant differences between them and Plaintiff's photograph.  These screen grabs come from a sequence apparently designed to visually convey the magnitude of Joseph Kony's atrocities.  The images progress from Kony with eight girls to Kony with thousands of girls.

This sequence begins with Russell's voiceover:

> The truth is, Kony abducts kids just like [my own].  For 26 years, Kony has been kidnapping children into his rebel group, the LRA, turning the girls into sex slaves and the boys into child soldiers.  He makes them mutilate people's faces, and he forces them to kill their own parents.

Kony 2012 video (Att. to Dkt. No. 39).  As Russell says, "and this is not just a few children," id., the first allegedly infringing image – showing Kony with eight girls – appears on-screen:

24



(Cmplt. (Dkt. No. 3) Ex. B)

Russell then says, "It's been over 30,000 of them," and other allegedly infringing images are shown, showing Kony with thousands of children he has kidnapped:



(Cmplt (Dkt. No. 3) Ex. B (one of the allegedly infringing images))

25



(Id. (one of the allegedly infringing images))



(Kony 2012 video (Att. to Dkt. No. 39))

At the end of this sequence of images, Kony is still visible in front of the girls, but now he lords over many thousands of girls, rather than simply the eight girls shown initially.[5]

In sum, "the allegedly infringing . . . [i]mage[s] [are] derived from a wholly dissimilar and dynamic medium, in which camera angles, lighting, and focus are changing [rapidly]." Gordon, 2011 WL 3648606, at *6. "Plaintiff supplies little authority for the proposition that a [few] frame[s] from a work containing [thousands] of discrete images can support a claim for copyright infringement of a still photograph." Id. (citations omitted). In any event, "the static rendition of the Gordon [i]mage bears no likeness to the pace and pulse of [the images shown in the Kony 2012 video]." Id. The difference in medium further underscores the dissimilarity in the total concept and feel of the images at issue.

This Court concludes that Plaintiff's photograph and the allegedly infringing Kony 2012 images do not share any meaningful similarities. Beyond the fact that all of these images show a male figure in a white tank top standing in front of a group of people with his arms extended out to his sides, there is precious little – conceptually, visually, or otherwise – that is common to Gordon's photograph and the Kony 2012 images. Accordingly, Plaintiff has failed to state a claim for copyright infringement, and this claim will be dismissed.

## IV.   PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER THE VARA

The Visual Artists' Rights Act, 17 U.S.C. § 101 et seq., protects artists' moral rights in their work. Carter v. Helmsley-Spear, Inc., 71 F.3d 77, 82-83 (1995). The Act grants creators of "works of visual art" "the right of attribution, the right of integrity and, in the case of

---

[5] The same sequence of images is used in the other videos to which Plaintiff provides links in her Complaint. See Cmplt. (Dkt. No. 3) ¶ 4. These videos are also available on the disc attached to Dkt. No. 39.

works . . . of 'recognized stature,' the right to prevent destruction." Carter, 71 F.3d at 83 (quoting 17 U.S.C. § 106A (Supp. III 1991)).

VARA's right of attribution provides "the author of a work of visual art . . . the right . . . to claim authorship of that work, and to prevent the use of his or her name as the author of any work of visual art which he or she did not create." 17 U.S.C. § 106A(a)(1). VARA also gives the author of a work "the right to prevent the use of his or her name as the author of th[at] work . . . in the event of a distortion, mutilation, or other modification of the work which would be prejudicial to his or her honor or reputation." Id. § 106A(a)(2).

The right of integrity under VARA permits "the author of a work of visual art . . . . to prevent any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation." Id. § 106A(a)(3). Any such "intentional distortion, mutilation, or modification of that work is a violation of" the right of integrity. Id. Additionally, where a "work [is] of recognized stature," the right of integrity also encompasses the right "to prevent any destruction" of the work. Id.

Here, Plaintiff claims that Defendants have violated her rights of attribution and integrity under the VARA. (Cmplt. (Dkt. No. 3) ¶¶ 5-8) She alleges that "Defendants have harmed Plaintiff[']s honor and reputation by causing confusion regarding authorship and diluting protectable elements of a 'work of recognized stature,'" and by "mutilat[ing], distorting, and modif[ying]" Plaintiff's image, in violation of VARA. (Id. ¶¶ 5-6) She also asserts that her reputation was harmed by Defendants associating "her work with [Invisible Children, Inc.,] a highly criticized organization." (Id. ¶ 7) Finally, Plaintiff complains that Defendants have violated VARA by "falsely attributing authorship of the Kony 2012 [c]ampaign to Jason Russell," when it is in fact based on her work. (Id. ¶ 8)

Plaintiff's VARA claims are premised on the notion that the Kony 2012 images are based on or misappropriate her photograph. This Court has found, however, that the Kony 2012 images are not related to, based on, or otherwise similar to Gordon's photograph. Because the Kony 2012 video is an entirely separate and independent work from Plant Your Feet on the Ground, any claim that it mutilates, distorts, modifies or otherwise misappropriates Gordon's photograph fails. See Carter, 71 F.3d at 82-83 (moral rights belong to person who created the work). Moreover, Defendants have not associated Plaintiff or her photograph with the Kony 2012 video. Accordingly, there is no claim under the VARA for attributing to Gordon a work of art that she did not create.

Because Plaintiff has not stated a claim under the VARA, that claim will be dismissed.

## V.   LEAVE TO AMEND WILL NOT BE GRANTED

District courts "ha[ve] broad discretion in determining whether to grant leave to amend." Gurary v. Winehouse, 235 F.3d 793, 801 (2d Cir. 2000). Leave to amend may properly be denied in cases of "'undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008) (quoting Forman v. Davis, 371 U.S. 178, 182 (1962)); see also Murdaugh v. City of N.Y., No. 10 Civ. 7218 (HB), 2011 WL 1991450, at *2 (S.D.N.Y. May 19, 2011) ("Although under Rule 15(a) of the Federal Rules of Civil Procedure leave to amend complaints should be 'freely given,' leave to amend need not be granted where the proposed amendment is futile." (citations omitted)). "'A pro se complaint is to be read liberally," however, and a "court should not dismiss without granting leave to amend

at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)).

        Here, there is no reason to believe that the deficiencies in Gordon's claims can be cured through re-pleading. Her claims fail not because she has pled them incorrectly or inartfully, but because there is simply no meaningful similarity between her photograph and the allegedly infringing images. This defect is not susceptible to cure. Where re-pleading would be futile, leave to amend should be denied. Cuoco, 222 F.3d at 112. Accordingly, Gordon's claims will be dismissed without leave to amend.

## CONCLUSION

        For the reasons stated above, Defendants' motion to dismiss is granted. The Clerk of the Court is directed to terminate the motion (Dkt. No. 21) and to close this case. The Clerk is further directed to mail a copy of this order to pro se Plaintiff Janine Gordon at 75 Fort Greene Place, Apt. 2F, Brooklyn, NY 11217.

Dated: New York, New York          SO ORDERED.
      September 24, 2015

                                 Paul G. Gardephe
                                 United States District Judge